UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal No. 2:21-cr-00131-JDL |
| vs. | ) | |
| | ) | |
| CAMERON EAGLE, | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING
AND MOTION FOR DOWNWARD SENTENCING VARIANCE**

COMES NOW the Defendant, CAMERON EAGLE, by and through his undersigned attorneys and submits this Motion for a Downward Sentencing Variance and Memorandum in Aid of Sentencing.

1.  On September 21, 2021, Mr. Eagle pled guilty to a one (1) Count Information, charging him with Solicitation of Child Pornography in violation of Title 18 U.S.C. §2252A(a)(3)(B)(b)(1). Thereafter, in preparation of the PSI Report, (hereinafter PSIR), Mr. Eagle submitted his letter of Acceptance of Responsibility fully admitting his wrongdoing. He expressed his sincere remorse and apologized for the hurt he caused the victims, their families, as well as his own family, and in particularly his wife, (PSIR, p.7-8). Starting with the moment he encountered law enforcement, Mr. Eagle has never attempted to excuse or otherwise justify his wrongful conduct. To the contrary, he is deeply remorseful and apologetic.

2.  Mr. Eagle respectfully submits this Sentencing Memorandum to assist the Court

in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C §3553(a) and per the principles enumerated in Nelson v. United States, 555 U.S. 892 (2009); Gall v. United States, 552 U.S. 38 (2007); United States v. Booker, 543 U.S. 220 (2005). As the Court knows these cases all hold that the Federal Sentencing Guidelines are no longer mandatory. Now, a sentencing court must consider the Advisory Sentencing Guidelines, then analyze all the factors set forth in 18 U.S.C §3553(a), and thereafter make an individualized assessment of the defendant and the offense based on the facts presented and "impose a sentence sufficient but not greater than necessary to accomplish the goals of sentencing." Kimbrough v. United States, 552 U.S. 85, 101 (2007).  A district court should not "presume that the Guideline Range is reasonable." Gall v. United States, supra, at 51; Nelson v. United States, supra, at 892; United States v. Taylor, 499 F.3d 94, 102 n.3 (1st Cir. 2007).

Furthermore, the Supreme Court and the First Circuit have rejected that "extraordinary circumstances are required to justify a sentence outside the Advisory Sentencing Guideline Range. Gall v. United States, supra, at 48; United States v. Vazquez-Rivera, 470 F.3d 443, 449 (1st Cir. 2006).

3.  As set forth herein, it is respectfully submitted that there are a number of mitigating variance factors per 18 U.S.C. §3553(a) that warrant a sentence substantially below Mr. Eagle's Advisory Sentence Guideline Range of 168 to 210 months imprisonment.

Specifically, Mr. Eagle's lack of any prior criminal history; his genuine, sincere remorse; his complete acceptance of responsibility from his very first contact by law enforcement; Mr. Eagle discontinued his criminal activity before law enforcement

contacted him; his willingness to cooperate with law enforcement; expert opinion that Mr. Eagle is not a danger to the public and is low risk to re-offend; his loss of career opportunities; and the unusual harsh pretrial confinement conditions Mr. Eagle has endured due to the COVID-19 pandemic all mitigate towards a substantially variant sentence. Mr. Eagle respectfully requests the Court to impose the required mandatory minimum five years incarceration, followed by a term of Supervised Release with conditions. This Sentence as discussed herein, satisfies all the §3553(a) sentencing factors, is the only sentence that is sufficient but not greater than necessary to achieve the statutory purposes of sentencing, and is a fair and just sentence.

4.   As the Court is aware, after Gall v. United States, supra, federal sentencing involves three steps:

1.  First, the Court must calculate correctly the Advisory Federal Sentencing Guidelines;

2.  Second, the Court must determine whether the particular facts of the case justify a "departure" either upward or downward under the United States Sentencing Guidelines themselves;

3.  Third, the court must independently evaluate each of the seven (7) factors set forth in 18 U.S.C. §3553(a), and determine what sentence is sufficient but not greater than necessary. See, Gall v. United States, 552 U.S. 33, 50-51; Rita v. United States, 551 U.S. 338, 352-54; United States v. Cortez-Medina, 819 F.3d 566, 572 (1st Cir. 2016), quoting United States v. Carrasco-De-Jesus, 589 F.3d 22, 29 (1st Cir. 2009).

1.  **THE ADVISORY FEDERAL SENTENCING GUIDELINES ARE**

**CORRECTLY CALCULATED**

The PSIR reports that Mr. Eagle has a Criminal History Category Ⅰ, and a total Adjusted Offense Level of <u>35</u> with the Advisory Sentencing Guideline Imprisonment Range: <u>168</u> to <u>210</u> months.

Mr. Eagle has no objections to Probation's calculation of the Advisory Sentencing Guidelines and agrees they have been correctly calculated.

## 2.  DOWNWARD DEPARTURE FACTORS:

Mr. Eagle acknowledges that there are no "Downward Departure Factors" under the Advisory Sentencing Guidelines that apply to his case.

## 3.  18 U.S.C. §3553(a) FACTORS:

## NATURE AND CIRCUMSTANCES OF THE OFFENSE (§3553(a)(1))

The PSI Report accurately describes Mr. Eagle's criminal conduct in paragraphs four through ten, pages 4-6. Mr. Eagle has never sought to minimize the seriousness of his conduct and he has acknowledged and accepted complete responsibility for committing a serious crime. (PSIR, p. 7-8).

As reflected on page 6 of the PSIR, on May 20, 2021, Agents from Homeland Security arrived at Mr. Eagle's residence unannounced with a search warrant. Mr. Eagle immediately cooperated. He did not invoke his right to an attorney. Instead, he immediately submitted to a voluntary recorded interview. During this interview, Mr. Eagle gave the Agents an apologetic, truthful, and heartfelt remorseful confession of his unlawful conduct.

He further consented to a forensic examination of his two mobile devices, which, as reported in the PSIR, page 6, revealed Mr. Eagle did not possess any child pornography.

Subsequent to his arrest, Mr. Eagle voluntarily and willingly met again with Federal Agents and United States Attorney Darcie McElwee. Once again, he truthfully answered all questions and cooperated as best he could.

Mr. Eagle's unlawful conduct occurred in 2020. As noted above, he was not approached by law enforcement until one year later, May 2021, at which time he immediately admitted his wrongdoing.

Upon being taken into federal custody on May 20, 2021, Mr. Eagle was first confined at the St. Lucie County Jail for approximately six (6) weeks. Due to COVID-19 concerns, he was quarantined, i.e., lockdowned twenty-three hours per day, for approximately the nearly three weeks of his incarceration. Six weeks later, he was transported to the Palm Beach County Jail.  After spending only a day or two there, he was then transported to a Federal Correctional Facility in Miami for ten days.  He was held in quarantine for most those ten days, which involved again being lockdowned for twenty-three hours per day.

Thereafter, Mr. Eagle was transported to the State of Oklahoma where he was held in Grady County Correctional Facility for approximately one month. He was then transported to Rhode Island where he was confined for five to six days under quarantine, which again included his (now third) period of being in lockdown for 23 hours each day. Mr. Eagle was then transported by van to the Cumberland County Jail ("CCJ") the end of July. He was placed in quarantine for two weeks and then in general population where he remains. During the period he has been at CCJ, there have been lockdowns due to COVID-19 outbreaks. See, *https://www.pressherald.com/2021/11/19/cumberland-county-jail-*

cpvid-19-outbreak-up-to- 34-inmates/  Unfortunately, Mr. Eagle has recently contacted COVID-19 and is now again in quarantine.

In weighing the "Nature and Circumstances" of Mr. Eagle's offense he acknowledges his was a serious offense. Nonetheless, there is no evidence Mr. Eagle downloaded any child pornography, and he did not "record" any of the video contacts and did not distribute any videos.  Additionally, as confirmed by the Government, his illegal activities were committed over a short period of time.

Courts have found that the seriousness of a defendant's offense is mitigated by the fact that his offense(s) occurred over a limited period of time. See, United States v. Baird, 580 F.Supp.2d 889, 893 (D. Neb. 2008). (The seriousness of the offense is further mitigated by the fact that the conduct occurred a number of years ago and there is no evidence that the activity continued over an extended period of time).

While Mr. Eagle understands the seriousness of his criminal conduct, it is respectfully submitted that the Advisory Sentencing Guidelines Sentence for him is greater than necessary. See, United States v. Stone, 515, F.3d 83, 97(1st Cir. 2009) (child pornography case wherein the appellate court affirmed the District Court's sentence, but in so doing the First Circuit noted: "we wish to express our view that Sentencing Guidelines at issue are, in our judgment, harsher than necessary.")

## THE HISTORY AND CHARACTERISTICS OF MR. EAGLE (§3553(a)(1))

Apart from the instant case, Mr. Eagle has led a completely law abiding life. He has no prior involvement with the criminal justice system.

As documented by attached character letters (Exhibits "C"-"K") and the PSIR Report, Mr. Eagle has maintained steady employment his entire life and does not consume alcohol or use illegal drugs. Mr. Eagle was born in December of 1985, in Sydney,

Australia. His Father Harron Gaffoor, and Mother Dorienne Elliott both continue to live in Australia. Mr. Eagle attended school in Australia, graduated from high school and attended University of Queensland obtaining Tennis Coach Certificate. While in school Mr. Eagle was the victim of bullying and racist comments. (PSIR, p.10) He also was sexually molested at school by an adult male. (PSIR, p.10)

Early on Mr. Eagle developed a love and passion for tennis. He became an accomplished player. At age sixteen, he came to the United States to live with his uncle, Charlton Eagle, in Boca Raton, Florida, who is a renowned Tennis Coach and trained to be a professional tennis player.

While living with his uncle, his uncle was asked to coach one of the best and upcoming female tennis players in America, Carly Gullickson, when she was fifteen.

It was during this time that Mr. Eagle first met Ms. Gullickson who he started dating, fell in love with her, and later they married ten years later in 2011, when Carly was twenty-five years old, and Mr. Eagle was twenty-six years old. Unfortunately, Mr. Eagle's pursuit of playing professional tennis himself was cut short at around age seventeen due to an ankle injury. He thereafter focused on a career as a tennis coach.

After getting married, Mr. Eagle came to the United States in 2011 full time and became a lawful permanent resident of the United States. He retained his Australian Citizenship. As a result of Mr. Eagle's conviction and sentence he will almost certainly be deported back to Australia after he serves his prison sentence. (Exhibit "A" letter from Ms. Kahn, Esquire, immigration lawyer).

Mr. and Mrs. Eagle have three children: Skylar age five, Blayden age two, and Ziara, who was born in August 2021.  Ziara was born while Mr. Eagle was incarcerated,

and he has never met her in person. (Exhibit "B").  Mrs. Eagle remains fully committed to her husband as discussed more fully herein. (Exhibit "I")

Prior to his arrest, Mr. Eagle was gainfully employed as a Tennis professional for approximately nine years at the PGA National Resort and Spa, Palm Beach Gardens, Florida. The majority of his clients were young girls and boys. Mr. Eagle developed a reputation for being a kind, compassionate, and devoted Tennis Coach for his youth students. (Exhibit "C").

A brief synopsis of the letters written by parents of Mr. Eagle's young clients all note that Mr. Eagle never displayed any inappropriate communications or actions with their children. He was always professional, and the parents trusted him and still trust him with their children. The parents were shocked to learn of Mr. Eagle's arrest.  They all immediately confirmed with their children Mr. Eagle was never inappropriate with them. The parents unanimously believe Mr. Eagle's conduct was an isolated incident, and do not believe Mr. Eagle would ever reoffend. In spite of Mr. Eagle's arrest/conviction, if allowed, the parents would welcome Mr. Eagle back coaching their children.

## SUPPORTERS OF MR. EAGLE:

### DR. CHARMAIN BARRETO:

Dr. Barreto notes in her letter to the Court that Mr. Eagle started giving tennis lessons to her daughter Chloe when she was eleven years old. She wrote Mr. Eagle was "the consummate professional and never behaved inappropriately." Dr. Barreto wrote that her daughter Chloe respects and considers Mr. Eagle more than just her tennis coach, but also as a mentor who gave life guidance in her development as a young woman. Chloe considers Mr. Eagle one of the top five people in her life she respects and looks up to.

8

Dr. Barreto sincerely believes that Mr. Eagle's actions were isolated events and does not believe Mr. Eagle would ever re-offend. She further noted that if Mr. Eagle was allowed to resume coaching her daughter, she, and others would "be clamoring to return to his coaching" fully trusting him and knowing that he would never harm them or behave indecently. (Exhibit "D").

### BOB WUHRMAN:

Mr. Wuhrman in his letter to the Court notes that he hired Mr. Eagle to work at PGA Resort and Spa ten years ago. He notes, Mr. Eagle was an "exemplary employee who everyone loved dearly." Mr. Eagle worked primarily with all the top junior tennis players in Palm Beach County. Mr. Eagle was extremely professional with the "juniors" and there were never any complaints or questions of Mr. Eagle's conduct.

Mr. Wuhrman notes that Mr. Eagle coached his own daughter since she was four years old, and is now sixteen years old.  If Mr. Eagle was not incarcerated, Mr. Wuhrman would want him to resume coaching his daughter, and would have no concerns and be completely comfortable in Mr. Eagle being around his young daughter.

Mr. Wuhrman believes that while Mr. Eagle made a big mistake and understands he must be punished, he believes Mr. Eagle is not a danger or threat to society and asks the Court to be lenient. (Exhibit "C").

### LECIA BRADY:

Ms. Brady in her letter to the Court notes that Mr. Eagle had been coaching her son for five years. She states that Mr. Eagle is the most dedicated, passionate, caring coach ever. She knows Mr. Eagle is extremely remorseful and he accepts full responsibility for his actions. She also knows Mr. Eagle to be a loving father and husband.

Ms. Brady notes that after Mr. Eagle's arrest she questioned her son if he ever heard Mr. Eagle say or do anything inappropriate with him or any of his students and particularly "girls." Her son emphatically answered "no" and was shocked to hear of Mr. Eagle's arrest. Ms. Brady noted that "I would open my door and let Cameron in tomorrow." (Exhibit "E").

### JILL FENSTER:

Ms. Fenster in her letter to the Court wrote that her son and daughter were Mr. Eagle's first students starting at ages six and seven. Both children told Ms. Fenster nothing inappropriate ever was said or done by Mr. Eagle. They all think very highly of Mr. Eagle as being kind and honest. (Exhibit "F").

### TIAGO MORELLI:

Mr. Morelli in his letter to the Court wrote that Mr. Eagle coached his two daughters for eight years, beginning when they were six and seven years old. Just like all the other students/parents, Mr. Morelli notes Mr. Eagle was always professional and appropriate within all his contacts with his daughters. (Exhibit "G").

Additional letters of support of Mr. Eagle have been attached hereto. (Exhibit "H").

### FAMILY MEMBERS SUPPORTING MR. EAGLE:

Family members also have written letters expressing their continued support for Mr. Eagle and upon completion of his sentence will welcome him home and support him in every possible way. Family support is an important §3553(a) factor, as discussed below:

### CARLY EAGLE:

Mr. Eagle's wife Carly and Mother of their three young children remains 110% supportive of him. She communicates daily with Mr. Eagle from the jail. She remains committed to their marriage and wants her and her children to reunite with Mr. Eagle

upon his return home from incarceration. (Exhibit "I"). Knowing that Mr. Eagle will be deported back to Australia, Mrs. Eagle intends, if allowed by Australia, to join her husband there. While this move will be difficult and emotionally taxing, Mrs. Eagle wants her children to have their father present to help raise them. Mrs. Eagle will address the Court at the Zoom Sentencing.

## CHLOE GULLICKSON:

Chloe Gullickson is Carly Eagle's sister and sister-in-law to Mr. Eagle. In her letter to the Court, Ms. Gullickson noted that Mr. Eagle was her tennis coach beginning when she was thirteen years old. They spent "endless hours" together perfecting her tennis game. According to Ms. Gullickson, Mr. Eagle was always professional and protective of her; he became a second Father to her.

Ms. Gullickson has communicated with Mr. Eagle since his arrest and confinement in jail. Mr. Eagle has shared how sorry and remorseful he is for his conduct, including the hurt he caused the victims and their families, and of course his own family.

Ms. Gullickson notes that she and her family look forward to welcoming Mr. Eagle home and will support him with "open arms." (Exhibit "J")

## WILLIAM GULLICKSON:

Mr. Gullickson, Mr. Eagle's Father-in-law, wrote in his letter to the Court that Mr. Eagle is a wonderful father to his grandchildren and best husband to his daughter Carly. He respectfully requests the Court to give Mr. Eagle a "second chance." He understands that Mr. Eagle likely will be deported back to Australia upon finishing his prison sentence. He knows that when this occurs, his daughter and grandchildren will attempt to relocate there as well, although he is worried Australian immigration laws may keep the family

separated for even longer. This move will be extremely stressful for the entire family as they are a very close-knit family. (Exhibit "K").

## THE HISTORY AND CHARACTERISTICS OF MR. EAGLE ESTABLISH A NUMBER OF §3553(a) FACTORS JUSTIFYING A VARIANT SENTENCE:

Courts have noted that a defendant who has strong family and community support is less likely to re-offend than a defendant without family support and such factor justified a reduced prison sentence, as a long prison sentence is not needed to protect the public. See, United States v. Beiermann, 599 F. Supp 2d 1087, 1110 (N.D. Iowa 2009). (Court noting that the continued support of defendant's spouse and friends suggests that the defendant is redeemable and will have significantly greater support than usual in his efforts at rehabilitation).

As noted, Mr. Eagle's wife and family remain very supportive of Mr. Eagle, as do all the parents of children Mr. Eagle coached.

Mr. Eagle has no prior criminal history. This, combined with Mr. Eagle who, from the outset, expressed genuine remorse and acceptance of responsibility for his conduct, all support a sentence below the Advisory Sentencing Guidelines Range. See, United States v. Baird, 580 F.Supp.2d at 893. (Sentence below the Advisory Sentence Guideline Range appropriate, in part, because the defendant has no criminal history points and is genuinely remorseful); United States v. Beiermann, 599 F. Supp.2d at 1112. (defendant's lack of criminal history and his shame mitigate the term of imprisonment necessary to deter him from future conduct.); United States v. Wachowiak, 496 F.3d 744 (7th Cir. 2007) (affirming district court's below Advisory Sentencing Guidelines Sentence in part due to defendant's lack of criminal history and genuine remorse.)

Likewise, Mr. Eagle's immediate cooperation with law enforcement is another factor courts have found important as it demonstrates remorse and desire to change that "[bodes well for his rehabilitation]." United States v. Ontiveros, Case No. 07-CR-333, 2008, WL 2937539 (E.D.Wisc. 2008); United States v. Pacheco, 727 F.3d 41, 47 (1st Cir. 2013) (defendant's attempts and willingness to cooperate may be considered a 18 U.S.C. §3553(a) factor.)

Mr. Eagle's personal history of not consuming alcohol, not ever using illegal drugs, his steady employment, and his lack of a criminal history all support the conclusion that Mr. Eagle is at very low risk to re-offend and that a lengthy prison sentence is thereby not necessary to prevent him from engaging in any future criminal conduct. United States v. Cherry, F.3d 366 (6th Cir. 2007) (defendant given a below guideline sentencing for possession of child pornography based in part because defendant deemed low risk of reoffending.)

Dr. Adam White, a Board Certified Forensic Psychologist performed a Forensic Psychological Examination of Mr. Eagle. Dr. White's Report is attached hereto as Exhibit "L". As noted in his Report, Dr. White's professional opinion within a reasonable degree of psychological certainty is that Mr. Eagle is not a pedophile, not a predator and is at very low risk to re-offend.

Courts have found that a below Advisory Sentencing Guideline Sentence is appropriate for defendants with low potential for recidivism, particularly when confirmed by an expert opinion. See, United States v. Baird, 580 F.Supp.2d at 894-895; United States v. Smith, 275 Fed. Appx. 184, 187-188 (4th Cir. 2008) (below guideline sentence appropriate in part because of defendant's low risk of recidivism).

Typically, defendants only change their behavior after getting caught or they have reason to believe they are under investigation. However, the opposite is true here.  Mr. Eagle discontinued his illegal activities before law enforcement came to his home. This strongly suggests he is a low risk to re-offend. The lengthy prison term suggested by the Advisory Sentencing Guidelines is therefore not necessary.

### 4. THE NEED FOR SENTENCE THE SENTENCE IMPOSED (§3553(a)(2))

The next §3553(a)(2) factor is "the need for the sentence imposed," including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to attend adequate deference to criminal conduct, to protect the public from further crimes of the defendant and to provide the defendant with needed education or vocational training or other care or treatment.

### SERIOUSNESS OF THE OFFENSE (§3553 (a)(2)(A))

It is respectfully submitted that the Defense recommended sentence of the mandatory minimum five years incarceration followed by a term of Supervised Release is by no means a lenient sentence, especially for someone like Mr. Eagle who prior to this case had never spent a day in jail and discontinued his criminal conduct before an investigation focused on him. Furthermore, such a sentence gives notice to others that child pornography cases are serious offenses which will result in serious punishment.

### RESPECT FOR THE LAW (§3553 (a)(2)(A))

In United States v. Stern, 590 F.Supp.2d 945, (N.D. Ohio 2008), the court noted that "[respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake.]" (Citation omitted). The court further noted "[t]here is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than reason to believe that respect for

the law will increase if a defendant who deserves a harsh penalty receives a slap on the wrist." Id; at 956-957.

Likewise, in United States v. Williams, 435 F.3d 1350, 1352-1353 (11th Cir, 2006), the Eleventh Circuit noted "[a sentence out of proportion to the conduct does not promote respect for the law but actually promotes disrespect for the law.]"

Again, the recommended sentence of five years of incarceration followed by Supervised Release is a serious, significant sentence particularly during COVID-19 and Omicron conditions.

Mr. Eagle also will have to live with all the serious collateral consequences of his conviction. He will not just be a convicted felon but will be a "convicted sex offender" subject to the rigorous sex offender registration requirements. The shameful label "sex offender" will follow him the rest of his life and will substantially limit where he will be able to work, who he can associate with and even live. Likewise, Mr. Eagle will most assuredly be deported back to Australia with the uncertainty of his wife and children being able to join him in Australia. (Exhibit "A").  Additionally, while under Supervised Release after his release from prison carries the risk of additional incarceration should Mr. Eagle re-offend.

The prosecution and incarceration of a man of Mr. Eagle's background and character promotes respect for the law by making it clear that no one is above the law, regardless of their stature in the community. See, United States v. Baird, 580 F.Supp.2d at 896.

## DETERRENCE AND PROTECTION OF THE PUBLIC (§3553(a)(B)(C))

In terms of deterrence, the analysis must include not just an explanation of how the sentence will deter the particular defendant to commit future offenses, (specific

deterrence), but include an explanation of how the sentence will deter others from committing like crimes in the future, (general deterrence). <u>See</u>, <u>United States v. Shipley</u>, 561 F.Supp.2d 739, 745 (S.D. Iowa 2008); <u>United States v. Russell</u>, 600 F.3d 631, 637 (D.C. Cir. 2010).

As noted herein, Mr. Eagle's lack of criminal history, his genuine, sincere remorse, his immediate cooperation with law enforcement, Dr. White's opinion that he is low risk to reoffend proves that specific deterrence has been accomplished in the instant case, justifying a variance from the Advisory Guidelines Sentence. <u>United States v. Shipley</u>, 560 F.Supp.2d at 744-45; <u>United States v. Beiermann</u>, 599 F.Supp.2d at 1112.

Likewise, the five year minimum mandatory term of imprisonment is a significant punishment that will send a clear message to others that child crimes such as the one committed by Mr. Eagle will be punished severely. This lengthy term of imprisonment recommended by the Advisory Sentencing Guidelines is greater than necessary to satisfy the deterrence factor of §3553(a)(2)(B).

As to the "protecting the public" factor §3553(a)(2)(C), the five year minimum mandatory term of imprisonment with all of the stringent conditions of sex offender supervision will protect the public.

As noted, Mr. Eagle's genuine remorse, acceptance of responsibility, lack of criminal history and the professional opinion of Dr. White strongly support the conclusion that Mr. Eagle is unlikely to re-offend. The Defense recommended sentence will protect the public.  <u>See</u>, <u>United States v. Baird</u>, 580 F.Supp.2d at 894-895.

## **TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER (§3553(a)(2)(D)**

As noted herein, Mr. Eagle for the vast majority of his life lived a law abiding life. He does not use alcohol, or illegal drugs, and thus has no substance abuse issues. He has a stable, loving marriage and family/community support. He has maintained steady employment where he performed his job duties professionally. He made a major mistake that has now put him in jail.

There is no evidence to suggest that Mr. Eagle will be more fully rehabilitated in prison for an unnecessary period of time. Mr. Eagle understands that he must be punished. However, a prison sentence above and beyond the mandatory five years is not necessary and unnecessarily keeps him from his wife and children who very much need him.

## KINDS OF SENTENCE AVAILABLE (§3553(a)(3)

In the instant case probation is not a possible sentence. Mr. Eagle is subject to the five year minimum mandatory prison sentence followed by Supervised Release up to life.

## THE SENTENCING GUIDELINES (§3553(a)(4)

Federal courts over the last many years have voiced their concerns and criticisms of the child pornography Sentencing Guidelines' provisions. Courts have noted that the Guidelines suggest a range of punishment harsher than appropriate. See, United States v. Dorvee, 616 F.3d 174, 184 (2nd Cir. 2010) (describing Sentencing Guidelines for child pornography as "fundamentally different from most" because "unless applied with great care [they] can lead to unreasonable sentences that are inconsistent with what §3553 requires)." In Dorvee, the court held the child pornography guideline sentence was substantially unreasonable. 616 F.3d at 183. See, also, United States v. Stone, 575 F.3d 83,

97 (1st Cir. 2009). (while the court affirmed the defendant's sentence the 1st Circuit noted that the child pornography guideline sentences were, in their opinion, too extreme)

According to U.S. Sentencing Commission, 2020 Sourcebook of Fed. Sentencing Statistics tbl. 31, 40 (2020), available at *https://www.ussc.gov/reaserch/sourcebook-2020* for fiscal year 2020, 60.8% of all child pornography sentences varied downward from the recommended guideline range. (Exhibit "M").

In United States v. Grober, 624 F.3d 592 (3rd Cir. 2010) the Third Circuit affirmed the district court sentence of five years mandatory minimum prison for the defendant charged with six Counts of child pornography crimes. The district court, United States v. Grober, 595 F.Supp.2d 382, 394-396, (D.N.J. 2008) reviewed several district courts' opinions all expressing concern about the child pornography guidelines and found these guidelines were not based on empirical data.

Specifically, the Grober Court first noted United States v. Baird, 580 F.Supp.2d at 894: ("based on the history of child pornography Guidelines as the Commission has keyed them into policy and statutory mandates, the sentencing ranges of imprisonment are a less reliable appraisal of a fair sentence"); United States v. Shipley, 560 F.Supp.2d at 744. ("the Guidelines for child exploitation offenses were not developed using an empirical approach by the Sentencing Commission but were rather mainly promulgated in response to statutory directives... These modifications do not appear to be based on any sort of empirical data and the court has been unable to locate any particular rational for them beyond the general revulsion that is associated with child exploitation related offenses"); United States v. Hanson, 561 F.Supp. 1004, 1010-1011, (E.D. Wisc. 2008) ("the flaw with the United States Sentencing Guidelines 2G2.2 today, is that the average defendant charges at the statutory maximum... the results are illogical"); United States v. Johnson,

588 F.Supp2d 997, 1003-1004 (N.D. Iowa 2008) ("at the urging of Congress the Sentencing Commission has amended the Guidelines under §2G2.2 on several occasions, recommending more severe penalties. As far as this court can tell those modifications do not appear to be based on any sort of empirical data and the court has been unable to locate any particular rational for them beyond the general revulsion that is associated with child exploitation related offenses").

Based upon its review of the above decisions, the district court in <u>Grober</u> concluded that the child pornography "guideline sentence" must be given <u>less</u> deference than the guidelines traditionally command." <u>United States v. Grober,</u> 595 F.Supp.2d at 402. As noted, the Third Court affirmed the district court's sentence of five (5) years prison.

Likewise, Mr. Eagle's Advisory Guideline Sentence of 168-210 months imprisonment is unreasonable and does not properly take into account all §3553(a) sentencing factors to insure a sufficient but not greater than necessary sentence for him.

### <u>POLICY STATEMENTS (§3553 (a)(5)</u>

There are no policy statements applicable to the instant case.

### 4.  <u>NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES (§3553(a)(6)</u>

While a court must be careful to ensure that a downward variance does not result in an unwarranted sentence disparity, in child pornography cases courts around the country have  given sentencing variances and imposed sentences below the Advisory Guideline Sentence: <u>See</u>, <u>e.g.</u>, <u>United States v. McElheney</u>, 630 F.Supp.2d 886 (E.D. Tenn. 2009); <u>United States v. Phinney</u>, 599 F.Supp.2d 1037 (E.D. Wis. 2009); <u>United States v. Grober</u>, 595 F.Supp.2d 382 (D.N.J. 2008); <u>United States v. Stern</u>, 590 F.Supp.2d 945 (N.D. Ohio 2008); <u>United States v. Johnson</u>, 588 F.Supp.2d 997 (N.D. Iowa 2008).

In that there are several §3553(a) factors that mitigate Mr. Eagle's case, the requested five year minimum mandatory prison sentence followed by supervised release, is a fair and just sentence as found by other sentencing courts.

## RESTITUTION (§3353(a)(7)

Pursuant to 18 U.S.C. §2259 restitution shall be ordered. However, the PSIR notes that to date no requests for restitution have been made. (PSIR, p.14).

## ADDITIONAL GROUNDS IN SUPPORT OF MR. EAGLE'S REQUEST FOR VARIANCE

Courts have held that certain collateral consequences as a result of a defendant's criminal conduct can be considered as §3553(a) factors in granting a variance from the Advisory Federal Sentencing Guidelines:

## SEX OFFENDER:

Mr. Eagle will be a convicted sex offender the rest of his life. As such he will be subject to many restrictions including, but not limited to, where he can work, live, subject to polygraph testing, including computer/internet access, and who he can and cannot be around.

The consequences of being a registered sex offender has been recognized as a factor that can be taken into account in fashioning a reasonable sentence. See, United States v. Garate, 543 F.3d. 1026, 1028 (8th Cir. 2008). (On remand from the Supreme Court for reconsideration in light of Gall, and overruling the court's prior holding that it was inappropriate for the district court to consider the lasting effects of being required to register as a sex offender)

In, United States v. Wachowiak, 412 F.Supp.2d 958 (E.D. Wisc. 2006), the district court noted one of several reasons it decided to give a below Advisory Sentencing

Guidelines Sentence was the guidelines failed to account the defendant will be forced to live with the stigma of being a sex offender for the rest of his life. On appeal, United States v. Wachowiak, 496 F.3d 744 (7th Cir. 2007), the 7th Circuit affirmed the district court's sentence but noted that if the collateral consequence of being a sex offender was the only reason relied upon by the district court, they may have examined the reasonableness of the departure sentence differently.

## LOSS OF CAREER COACHING MINORS

As noted by the numerous character letters written on behalf of Mr. Eagle, he has worked most of his adult life as a Tennis Coach for younger children. As a result of his conviction herein, Mr. Eagle will likely be prohibited from having contact with children and consequently he will not be able to continue working as a Youth Tennis Coach, a job he loves and has excelled at, as noted by the numerous letters by parents of kids he coached.

In United States v. Pauley, 511 F.3d. 468, 474-75 (4th Cir. 2007), a lower sentence was warranted in part as the defendant lost his tenure as a teacher after being convicted of child pornography charges.

Likewise, in United States v. Wachowiak, 412 F.Supp.2d 958, 964, (E.D. Wisc. 2006) the district court included in its reasons to grant a below Advisory Guideline Sentencing Sentence was the defendant's future career as a teacher was ruined and he was compelled to resign as a children's piano teacher and church musician, as a result of his convictions for child pornography charges.

## **UNUSUAL HARSH PRETRIAL CONFINEMENT:**

Several courts have departed downward based upon condition of pretrial confinement, including departures based upon harsher conditions imposed as a result of the COVID-19 pandemic[1]. See, United States v. Estrada, N. 19-cr-5058-BAS, 2021 U.S. Dist. LEXIS 80602, at *2 (S.D. Cal. Apr. 27, 2021) (noting downward departure "because the conditions of confinement were particularly harsh during the pandemic."); United States v. Romero, 2021 U.S. Dist. LEXIS 73877, at *9 (S.D.N.Y. Apr. 16, 2021) (observing "long before the current pandemic, courts had recognized that periods of pre-sentence custody spent in unusually harsh conditions merited recognition by courts in measuring the just sentence.").   In United States v. Francis, 129 F.Supp.2d 612, 614-15, (S.D. N.Y. 2001), a pre Booker case, the court addressed and surveyed various conflicting district court decisions whether a sentencing judge may grant a downward "departure" based on the conditions of an inmate's presentence confinement.  The court found there was no clear consensus of opinions, but ultimately determined conditions of pretrial confinement could be a ground for departure.

As outlined above, Mr. Eagle's pre-trial incarceration has been harsher that those in pre-COVID times. While everyone in society has felt the impact associated with COVID-19 and its many variants, Mr. Eagle faced those challenges in a jail environment. Mr. Eagle lived with the daily understanding that confinement could lead to deadly consequences. And because of the pandemic, he spent time, many days and weeks in lockdown conditions.

---

[1] Mr. Eagle acknowledges this argument was made before this Court in United States v. Stewart, Case No.: 2:19-cr-00124-JDL-1.

Mr. Eagle's conditions of confinement clearly were harsher than would be typical during pre-COVID/Omicron times. This global Pandemic certainly was not a circumstance that the Sentencing Commission ever considered, and as such this Court is respectfully requested to consider Mr. Eagle's unusual harsh pretrial confinement, as well as the likelihood that such conditions will continue for the foreseeable future, as a §3553(a) variance.

## CONCLUSION:

As set forth herein, there are a number of reasons and factors in Mr. Eagle's background and current circumstances that clearly warrant a downward variance sentence. Mr. Eagle's unique personal circumstances include his status as a first-time offender; discontinued his illegal actions before law enforcement contacted him; his immediate acknowledgment of his crime; his sincere and genuine remorse for his conduct and appreciation for the harm caused to minor victim "A," "B," their families, and to his own family; the expert opinion of Dr. White that he is low risk to re-offend and is not a predator, all support and justify a sentencing variance to the five year minimum mandatory prison sentence followed by a term of Supervised Release.

Mr. Eagle's life has forever been changed as a result of his conduct. He will forever be labeled a sex offender and almost certainly be deported from the United States of America[2].

---

[2] Although Courts are divided on whether a defendant's deportation is a proper 18 U.S.C.§3553(a) factor, see e.g., United States v. Ngatia, 477 F.3d 496, (7th Cir. 2007); United States v. Maldonato, 242 F.3d 1,2 (1st Cir. 2001), it is near certain that Mr. Eagle will be deported. He likely will be separated from his wife and children for a longer period of time pending his final deportation at the end of his sentence. Moreover, the level of additional cost to taxpayers to incarcerate Mr. Eagle beyond the recommended five years is significant. As detailed in the PSIR paragraph 56, if a ten year 120 month sentence is imposed versus the requested 60 months sentence will cost taxpayers an extra $221,280.00. This additional spending is an unnecessary burden to taxpayers.

Mr. Eagle fully accepts and understands that he must be punished for what he did. That being acknowledged, he, his family, and friends all respectfully request this Court to impose a sentence of five years prison followed by Supervised Release which is respectfully, a just, reasonable sentence.

Lastly, the Court is respectfully requested to make a recommendation to the Bureau of Prisons that Mr. Eagle be given a designation to a facility close to Florida where his family resides, and a facility that will offer sex offender treatment.  Mr. Eagle is willing to participate in any programs that, while not perhaps expressly needed, may help ensure the Court of his intention to be a law abiding citizen.

Dated:  February 7, 2022

Respectfully Submitted,

/s/ David Roth------------------
DAVID ROTH, Fla. Bar #116023
*Email:  droth@rothduncan.com*
*ROTH & DUNCAN, P.A.*
*Counsel for Cameron Eagle*

/s/ Douglas Duncan--------------
DOUGLAS DUNCAN, Fla. Bar # 309672
Email: dougduncan325@gmail.com
ROTH & DUNCAN, P.A.
Northbridge Centre, Suite 325
515 North Flagler Drive,P.O. Box 770
West Palm Beach, Florida 33402
*Counsel for Cameron Eagle*

/s/ Stacey D. Neumann
Stacey D. Neumann, Esq.
sneumann@mpmlaw.com
MURRAY PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME  04104-5085
*Local Counsel for Cameron Eagle*